# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:06-CV-00071

| | |
|---|---|
| CHARLIE HOOKS, SALLY WADE, and TRACY A. BOLES, )<br><br>Plaintiffs, )<br><br>v. )<br><br>AMERICAN MEDICAL SECURITY LIFE INSURANCE COMPANY, AMERICAN MEDICAL SECURITY, INC., UNITED WISCONSIN LIFE INSURANCE COMPANY and TAYPAYER NETWORK, INC., )<br><br>Defendants. ) | ORDER |

**THIS MATTER** comes before the court on Plaintiffs' Motion to Remand.

## BACKGROUND

The Plaintiffs, Charlie Hooks, Sally Wade, and Tracy A. Boles, all residents of North Carolina, filed this class action in Mecklenburg County Superior Court against Defendants American Medical Security Life Insurance Company ("AMS"), American Medical Security, Inc., United Wisconsin Life Insurance Company[1], and Taypayer Network, Inc. alleging claims for fraud, breach of fiduciary duties, unjust enrichment, and unfair trade practices under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUTP"), N.C. Gen. Stat. § 75-1.1. Defendants are Wisconsin and Ohio corporations. Plaintiffs allege that the Defendants charged excessive premium rates for group health insurance policies sold to the Plaintiffs and other similarly situated North Carolinians.

---

[1] In November 2004, American Medical Security, Inc., and United Wisconsin Life Insurance Co. merged, with United Wisconsin Life Insurance Co. being the surviving entity and renaming itself "American Medical Security Life Insurance Co."

Plaintiffs seek actual damages, punitive damages, injunctive relief, and attorneys' fees. According to Defendants, there are 10,472 potential class members. Defendants timely removed the case to this court based on diversity of citizenship. The Notice of Removal merely cited 28 U.S.C. §1332 and alleged that all the individual Plaintiffs are citizens and residents of North Carolina, that the Defendants are Wisconsin and Ohio corporations, and that more than $75,000, exclusive of interests and costs, is in controversy. Although Plaintiffs filed this action as a class action, nowhere in the Notice of Removal did Defendants cite, rely on, or provide any evidence that the Class Action Fairness Act of 2005 ("CAFA") may provide a basis for removal. Under CAFA, 28 U.S.C. §1332(d), district courts have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000, there are at least 100 plaintiffs in the class, and any single plaintiff is a citizen of a state different from any defendant.

## DISCUSSION

### A. Burden of Proof

Any action over which the district courts have original jurisdiction that is filed in state court can be removed to federal court. 28 U.S.C. § 1441. If the district court determines that it lacks jurisdiction, the court must remand the case to state court. 28 U.S.C. § 1447. The party seeking removal has the burden of establishing federal jurisdiction. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Where jurisdiction is based upon diversity of citizenship, the party seeking removal must show by a preponderance of the evidence that the $75,000 amount-in-controversy requirement is met. Dash v. FirstPlus Home Loan Owner Trust 1996-2, 248 F.Supp.2d 489, 497 (M.D.N.C. 2003); Prentiss v. Allstate Ins.Co., 87 F.Supp.2d 514, 517 n.1 (W.D.N.C. 1999). In determining whether the amount in controversy is met, the court may look at the entire record,

including the complaint, the removal petition, and affidavits. Dash, 248 F.Supp.2d at 498-9.

**B. Amount in Controversy**

Two or more plaintiffs in a class action may not aggregate their separate and distinct claims to meet the requisite jurisdictional amount. Glover v. Johns-Manville Corp., 662 F.2d 225, 231 (4th Cir. 1981). The court, however, has supplemental jurisdiction over all claims in a class action if at least one plaintiff meets the amount-in-controversy requirement, even if other class members fail to meet the amount-in-controversy requirement. Exxon Mobile Corp. v. Allapattah Servs., Inc., 125 S.Ct. 2611, 2620 (2005).

Since Plaintiffs have asserted a claim under the NCUTP, they would automatically be entitled to treble damages if successful on this claim. See N.C.Gen.Stat.. § 75-16. In actions like the one herein, where Plaintiffs assert claims under both the NCUTP and for fraud based on the same conduct or transaction, they may receive punitive damages or be awarded treble damages but may not receive both. See United Labs., Inc. v. Kuykendall, 102 N.C. App. 484, 492, 403 S.E.2d 104, 110 (1991). Should Plaintiffs elect to receive punitive damages, N.C.Gen.Stat. § 1D-25 limits the amount of punitive damages that may be awarded to either three times the amount of compensatory damages or $250,000, whichever is greater.

While the Fourth Circuit has not yet ruled as to whether plaintiffs in a class action may aggregate their punitive damages, the general national trend is that plaintiffs' punitive damage claim cannot be aggregated and attributed in total to each member of a class for purposes of satisfying the amount-in-controversy requirement of diversity jurisdiction. See, e.g., Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001), aff'd on other grounds, 126 S.Ct. 704 (2005); Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 765 (8th Cir. 2001); H&D Tire and Automotive-

3

Hardware, Inc. v. Pitney Bowes, 250 F.3d 302, 304 (5th Cir. 2001); Cohen v. Office Depot, Inc., 204 F.3d 1069, 1075 (11th Cir. 2000); Gilman v. BHC Securities, Inc., 104 F.3d 1418, 1430-31 (2d Cir. 1997).

Injunctive relief may also be considered in determining the amount in controversy for individual plaintiffs, Griffin v. Red Run Lodge, Inc., 610 F.2d 1198, 1205 (4th Cir. 1979), but the Fourth Circuit has not ruled as to how injunctive relief affects the amount-in-controversy requirement in class actions. Other federal courts have ruled that examining the potential cost of complying with an injunction would directly contradict the goals of the amount-in-controversy requirement. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 861 (9th Cir. 2001); Packard v. Provident Nat. Bank, 994 F.2d 1039, 1050 (3rd Cir. 1993) (stating that injunctive relief could not be included to determine the amount-in-controversy requirement where the majority of the relief requested was money damages).

Lastly, while the Fourth Circuit has likewise not yet ruled on whether attorneys' fees can be aggregated, other federal courts have ruled that attorneys' fees cannot be aggregated to meet the amount-in-controversy requirement. See Martin, 251 F.3d at 1293; Crawford, 267 F.3d at 765-66; Kanter, 265 F.3d at 858; Morrison v. Allstate Indemnity Co., 228 F.3d 1255, 1266 (11th Cir. 2000).

After reviewing the filings of the parties, the court finds that the Defendants have failed to meet their burden of establishing that any single Plaintiff can claim over $75,000 in damages. Plaintiffs, if their claims are successful, may receive either actual damages and punitive damages or trebled actual damages and no punitive damages. Plaintiffs have filed an affidavit which states that no individual Plaintiff is eligible to receive actual damages over $15,000. Thompson Aff. ¶ 3. If Plaintiffs are successful, receive maximum damages, and choose to receive actual damages and

punitive damages rather than just trebled actual damages, based on the Thompson Affidavit, each individual Plaintiff would receive a maximum of $15,000 in actual damages. Consequently, each individual Plaintiff would be in need of $60,001 in punitive damages and fees to meet the amount-in-controversy requirement. This court will not consider an injunction as part of the amount-in-controversy. Therefore, based upon the number of potential Plaintiffs, the entire class would be in need of an award of over $600,000,000 in punitive damages and fees. Such a large award is unlikely and has not been proven by the Defendants by a preponderance of the evidence.

Likewise, the $75,000 amount-in-controversy requirement is not met if Plaintiffs choose to instead receive trebled actual damages and no punitive damages. In that case, each individual Plaintiff would receive a maximum of $15,000 in actual damages, which, when trebled, are $45,000 per Plaintiff, which leaves each individual Plaintiff in need of $30,001 in attorneys' fees to meet the amount-in-controversy requirement. Therefore, Plaintiffs's attorneys would have to generate over $150,000,000 for the entire class in attorneys' fees for each individual plaintiff to meet the amount-in-controversy. As a result, whether the Plaintiffs receive actual and punitive damages or just trebled damages, in either case, the Defendants have not proven by a preponderance of the evidence that the amount-in-controversy requirement is met. Consequently, if jurisdiction is based solely on §1332(a), remand is appropriate.

### C. Removal under CAFA

Defendants argue that even if an individual Plaintiff cannot meet the requisite jurisdictional amount, removal is still appropriate under CAFA. However, as noted, nowhere in their Notice of Removal did the Defendants cite CAFA or allege that the requirements of CAFA are met.

A defendant may not amend a notice of removal more than thirty days after removal other

than to correct facts underlying jurisdictional allegations. FHC Options, Inc. v. Sec. Life Ins. Co. of Am., 993 F.Supp. 378, 382 (E.D.Va. 1998). After the thirty day deadline, the notice of removal may be amended to fix technical defects, but not substantive defects, in jurisdictional allegations. Boelens v. Redman Homes, Inc., 759 F.2d 504, 512 (5th Cir. 1985); Davis v. Life Investors Ins. Co. of Am., Inc., 214 F.Supp.2d 691, 693 (S.D.Miss. 2002) (stating that in amending a notice of removal after the thirty day deadline, defendant may not go beyond correcting technical defects to add an entirely new basis for federal jurisdiction). Courts, however, have allowed a defendant to correct a removal petition that "has failed to allege all of the specific facts" for diversity jurisdiction so long as the party is not exerting an entirely new basis for jurisdiction. Davis, 214 F.Supp.2d at 693.

Under the 2005 amendments to 28 U.S.C. §1332 made by CAFA, district courts have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000, there are at least 100 plaintiffs in the class, and there is minimal diversity between the parties. 28 U.S.C. §1332(d)(2),(5). The claims of individual class members may be aggregated to meet the $5,000,000 amount in controversy. 28 U.S.C. §1332(d)(6). The Senate Judiciary Committee noted that it "intends this subsection to be interpreted expansively . . ." S. Rep. No. 109-14 at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3,40. Moreover, the Committee stated that it was problematic that class actions which affected numerous people were not heard in federal court simply because no member of the class sought more than $75,000 in damages. Id. at 10-1. The Committee noted that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Id. at 42.

The Notice of Removal filed by the Defendants cited 28 U.S.C. §1332 as the basis of

jurisdiction for this court, but did not cite CAFA or specific facts supporting jurisdiction based on CAFA.. However, given the clear intent of Congress to make it easier for class actions to be removed to federal court, the court will allow the Defendants to amend their Notice of Removal to specifically cite CAFA as the basis for federal jurisdiction. Even though the Notice of Removal failed to specifically cite CAFA, Plaintiffs had adequate notice under §1332 that CAFA would potentially apply to this case because the Plaintiffs filed this case in state court as a class action. Because CAFA is included as a subsection of 28 U.S.C. §1332, the court further finds that Defendants' failure to cite CAFA or specific facts under CAFA to be a technical defect rather than a substantive defect. Thus, even though the 30 day deadline has passed, the Defendants will have an opportunity to amend the defective Notice of Removal to properly cite CAFA as a grounds for removal, along with the necessary facts supporting jurisdiction under CAFA.

Once the Notice of Removal has been amended, the court must still decide whether this case meets the criteria set forth in CAFA. There is clearly diversity between the parties as the Plaintiffs are North Carolina residents and the Defendants are Wisconsin and Ohio corporations. As for the number of Plaintiffs in the class, the Defendants have submitted an affidavit that AMS had 10,472 policyholders in North Carolina. Modaff Aff. ¶ 6. Even though the Plaintiffs assert a class of all North Carolina policyholders, the class members entitled to compensation would be limited to those who were sold "group life insurance" policies and whose premiums allegedly were substantially raised due to the insurance claims they filed and the state of their health. As a result, discovery needs to be conducted to determine the number of plaintiffs who are a part of the class.

Furthermore, there is not enough evidence before the court for it to determine whether the amount in controversy exceeds $5,000,000 for the whole class. According to the Thompson

Affidavit, none of the named Plaintiffs could receive damages in excess of $15,000. Thompson Aff. ¶ 3. Defendants allege that the amount in controversy is met because $15,000 multiplied by 10,472 plaintiffs yields a result significantly larger than $5,000,000. This calculation, however, is inexact because $15,000 is the maximum damages an individual Plaintiff could receive and 10,472 is the maximum number of Plaintiffs that could be in the class. Therefore, additional evidence is needed before the court to determine whether the amount-in-controversy exceeds $5,000,000.

**IT IS THEREFORE ORDERED** that Defendants are directed to amend the Notice of Removal forthwith to cite CAFA as a basis for jurisdiction.

**IT IS FURTHER ORDERED** that the parties are hereby directed to report to the court within 30 days what discovery needs to be conducted solely on the issues outlined above and how long they need to conduct such discovery. At that time, the court will enter an order allowing a period of time for such discovery and directing the parties to file supplemental briefs at the conclusion of the discovery period.

Signed: August 29, 2006

Graham C. Mullen
United States District Judge