# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL CASE NO. 3:06cv71

| | |
|---|---|
| CHARLIE HOOKS, SALLY WADE, )<br>JOHNNY BOLES and TRACY BOLES, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>AMERICAN MEDICAL SECURITY )<br>LIFE INSURANCE COMPANY, )<br>AMERICAN MEDICAL SECURITY, )<br>INC., UNITED WISCONSIN LIFE )<br>INSURANCE COMPANY and )<br>TAXPAYER NETWORK, INC., )<br>)<br>Defendants. )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 37], filed June 4, 2007.

**PROCEDURAL HISTORY**

On December 27, 2005, the Plaintiffs filed a class action complaint in the General Court of Justice, Superior Court Division, Mecklenburg County,

1

North Carolina. [Doc. 1, filed February 17, 2006]. On February 17, 2006, the Defendants removed the action to this Court based on diversity jurisdiction. [Id.]. On March 8, 2006, the Defendants moved to dismiss the action, citing the "filed rate doctrine" and deficiencies in the allegations of fraud in the complaint. [Doc. 7]. On March 20, 2006, the Plaintiffs moved to remand the case to state court. [Doc. 16]. The motion to dismiss was held in abeyance during a period of discovery on the limited issue of jurisdiction. The motion to remand was denied by the Hon. Graham Mullen on March 21, 2007. [Doc. 28].

On April 9, 2007, the Plaintiffs received an extension of time within which to file response to the motion to dismiss; however, in addition to filing a response, they also filed an Amended Complaint. [Doc. 29, filed April 9, 2007; Docs. 31 & 32, filed April 27, 2007]. Because the Amended Complaint resolved the issues concerning allegations of fraud, the Defendants withdrew their first motion to dismiss and received an extension of time within which to answer or otherwise move in connection with the Amended Complaint. [Doc. 36, filed May 11, 2007; Doc. 35, filed May 15, 2007]. On June 4, 2007, the Defendants filed their second motion to dismiss. [Doc. 38].

On September 19, 2007, this action was reassigned to the undersigned.

## STANDARD OF REVIEW

The Defendants have moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has recently clarified the standard of review used to evaluate complaints in connection with Rule 12(b)(6) motions.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]
>
> ...
> [This standard does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, at 164-65, 174, 167 L.Ed.2d 929 (2007),(citations omitted). As has always been the case, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v.

3

Pardus, __ U.S. __, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). However, the court "'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

The Supreme Court thus requires a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157 (2nd Cir. 2007), *certiorari granted* __ S.Ct. __, 2008 WL 336310, 76 USLW 3417 (2008) (emphasis in original); *accord*, Giarratano, 521 F.3d 298; Self v. Norfolk Southern Corp., 264 Fed.Appx. 313 (4th Cir. 2008) (citations omitted).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996); *accord*, Eriline Co. S.A. v. Johnson, 440 F.3d 648 (4th Cir. 2006); Lupton v. Blue Cross and Blue Shield of North Carolina, 139 N.C.App. 421, 424, 533 S.E.2d 270 (2000), *review denied* 353 N.C. 266,

4

546 S.E.2d 105 (2000) (a motion to dismiss is properly granted "where a valid legal defense stands as an insurmountable bar to a plaintiff's recovery.").

## ALLEGATIONS OF THE COMPLAINT

In November 2004, American Medical Security, Inc. (American Medical) merged with United Wisconsin Life Insurance Company (United Wisconsin) to form American Medical Security Life Insurance Company (AMS). [Doc. 31 at ¶5; Doc. 38, filed June 4, 2007, at 1, n.1]. AMS is in the business of selling and administering insurance policies, including health insurance policies. [Doc. 31]. The allegations of wrongdoing, however, relate to time periods prior to the merger. As a result, it is necessary to refer to the separate predecessor entities.

American Medical and United Wisconsin were both insurance companies licensed in the state of North Carolina. [Doc. 31 at ¶¶5-6]. United Wisconsin sold and administered health insurance policies. [Id.]. Taxpayer Network, Inc. (TNI) is a non-profit association doing business in North Carolina. [Doc. 31at ¶7]. Plaintiffs allege that the Defendants used TNI to market and sell group health insurance policies in North Carolina.

[Id.]. They also allege that TNI is owned, at least in part, by American Medical and United Wisconsin. [Doc. 31 at ¶12].

In 2002, Plaintiff Charlie Hooks (Hooks) asked his employer for a recommendation for health insurance. [Doc. 31 at ¶2a]. He was referred to John P. Pearl & Associates in Illinois. [Id.]. An employee of that business, Danelle Sinacori, represented herself as an insurance broker for American Medical.[1] [Id.]. Hooks received a brochure from Sinacori advising that he could purchase group health insurance from American Medical but would have to become a member of TNI. [Id.]. He was to send one check each month to American Medical for his premiums and American Medical would take from that check his membership dues which it would forward to TNI. [Id.]. Hooks alleges that American Medical kept half of the membership dues instead of sending all of the dues to TNI. [Id.]. Hooks characterizes that retained half as additional insurance premiums. [Id.].

Plaintiff Sally Wade originally purchased group health insurance through her employer; however, when she left employment, she had

---

[1]The Complaint actually alleges that Sinacori represented herself to be a broker of AMS. Since AMS was not formed until the 2004 merger, it appears that this reference is a mistake. The Court takes this allegation to allege what was most plausibly intended by the Plaintiffs.

6

insurance through Pan American Life (Pan American).² [Doc. 31 at ¶¶3b-3c]. The Complaint does not specify whether the insurance with Pan American was group or individual health insurance. At an undisclosed point after September 1997, Wade received a Certificate of Group Insurance showing she was insured for group health insurance through TNI.³ [Id., at ¶3c]. Attached to the Certificate was a notification that American Medical was the health insurance administrator and United Wisconsin was the actual insurer. [Id.]. Although Wade alleges that the Certificate named TNI as the insurer, it is also alleged in the same paragraph that the Certificate notified Wade that her group insurance was issued through Ultimate Insurance Trust in Birmingham, Alabama. [Id.]. Wade also alleges that at an undisclosed point in time, her American Medical/United Wisconsin group policy of health insurance was transferred to TNI. [Id.]. Apparently prior to that point, Wade had been charged membership dues for TNI by American Medical, which, she alleges, kept part of the dues as an additional insurance premium. [Id.]. Wade alleges that American Medical failed to pay insurance premium taxes on these

---

²In April 1998, United Wisconsin purchased Pan American. [Id.].

³The Complaint does not specify in what manner Wade received this document.

amounts as is required by state law. [Doc. 31 at ¶3d].

Wade alleges that prior to 1998, she had serious medical problems which required extensive treatment. [Doc. 31 at ¶3c]. As a result, claims were submitted for insurance coverage to American Medical. [Id.]. She also alleges that between 1998 and 1999, her premiums increased by 90%. [Id.].

In 1998, Plaintiff Johnny Boles was a self-employed truck owner-operator. [Doc. 31 at ¶4a]. In response to a billboard advertisement, Boles' wife consulted with Randy Champion, an insurance agent, who advised that they would qualify for group health insurance through United Wisconsin and administered through American Medical. [Id.]. The Boles purchased the insurance and were told they were obligated to join an association similar to TNI and to pay membership dues to that association. [Id.]. The association is not identified in the Complaint.

The Boles allege that in 1999, their insurance premiums increased by 100% based on change in case characteristics and changes in diagnosis. [Doc. 31 at ¶4b]. As a result, the Boles could not afford the premiums and cancelled their coverage. [Id.].

The Plaintiffs also allege the following:

> Defendants represented to Plaintiffs and others similarly situated that by joining TNI and similar associations and being in a group and thus obtaining group health insurance, Plaintiffs' premiums would be lower, even if claims were made, because rate increases would be a function of the "group" claims experience rather than each individual insured's claims experience. Relying on these representations, the Plaintiffs and others similarly situated purchased said policies. ... In reality, the premiums charged to Plaintiffs and others similarly situated were not a function of the "group" claims experience but rather were a function of an individual participant's personal claims experience and health condition. As a result, when Plaintiffs made claims Defendants raised their premiums in a specific and deliberate attempt to force unhealthy insureds out of the Defendants' block of business and maintain only healthy insureds in its policies.

[Doc. 31 at ¶16-17].

The Plaintiffs have alleged causes of action for fraud, unfair and deceptive trade practices, breach of fiduciary duties and unjust enrichment.

## DISCUSSION

Defendants have moved to dismiss, citing the filed rate doctrine pursuant to which there is no private cause of action for claims attacking the propriety of insurance rates which have been filed with and approved by the North Carolina Insurance Commissioner. Plaintiffs respond by arguing that the filed rate doctrine does not apply here because they are not attacking the initial premiums, which were filed and approved by the

9

Commissioner.[4] They are instead attacking the renewal premiums which were never so filed and approved. They also argue that the "dues" allegedly paid to TNI, which they claim was partially owned by American Medical and United Wisconsin, were actually premiums.[5] Based on these allegations Plaintiffs argue their causes of action fall outside the scope of the filed rate doctrine.

"The filed rate doctrine provides that a plaintiff may not claim damages on the ground that a rate approved by a regulator as reasonable is nonetheless excessive because it is the product of unlawful conduct." N.C. Steel, Inc. v. National Council on Compensation Ins., 347 N.C. 627, 632, 496 S.E.2d 369, 372 (1998). The North Carolina Supreme Court has held that the filed rate doctrine applies to the insurance industry in this state. Id. Indeed, by statute, "[n]o policy of group ... health insurance shall

---

[4] The Plaintiffs also variously argue that there is no proof in the record that the Defendants ever initially filed their rates with the North Carolina Insurance Commissioner. The Court finds this argument to be meritless. This matter is before the Court on a Motion pursuant to Rule 12(b)(6), which only examines the sufficiency of the Complaint. There is no requirement that the Defendants present *any* record. The Plaintiffs make no allegations that the Defendants violated the law by failing to obtain Commissioner approval. Moreover, Plaintiffs admit in the Complaint that the Defendants do business in North Carolina and that the only rates at issue are the renewal rates. [Doc. 31 at ¶¶1, 5, 6, 26a & 26b].

[5] Although not explicitly alleged, because of the ownership, American Medical and United Wisconsin were apparently able to retain these additional premiums.

be delivered ... unless the form of the policy contracts including the master policy contract, the individual certificates thereunder, the applications for the contract, and a schedule of the premium rates ... have been filed with and the forms approved by the Commissioner." N.C.G.S. §58-51-85. The Department of Insurance has promulgated regulations requiring that form and rate filings include "rates by age and mode of payment, including a signed actuarial memorandum" as well as comparisons when the companies "are revising previously-approved forms." 11 N.C. A.D.C. 12.0329.

> [A]fter rates have been set by a regulator, those rates may not be collaterally attacked. The proper venue for questions involving rates is through the Insurance Commissioner and not a court or a jury. The filed rate doctrine precludes a plaintiff from requesting a recalculation of the rates the Commissioner would have set absent the alleged illegal conduct of a defendant. The "General Assembly has given the Insurance Commissioner the duty of setting rates. The Commissioner, aided by his staff, has the expertise to determine proper rates."

Lupton v. Blue Cross and Blue Shield of N.C., 139 N.C.App. 421, 424-25, 533 S.E.2d 270, 272-73, *review denied* 353 N.C. 266, 546 S.E.2d 105 (2000) (other citations omitted).

> [C]hapter 58 of the General Statutes contains a comprehensive regulatory scheme for insurance companies, which includes provisions for punishing violators of the chapter. It also contains a provision for the appeal of decisions of the Commissioner.

> [W]ith this comprehensive regulatory scheme, the General Assembly [did not] intend[] that the rates should be collaterally attacked.

N.C. Steel, 347 N.C. at 632, 496 S.E.2d at 372. Thus, no private cause of action lies for any misconduct in obtaining or setting the rate.

Plaintiffs argue they are not attacking the rates but suing because the insurance companies increased renewal rates in violation of the group rates initially disclosed. In their brief plaintiffs characterize this as a breach of contract because instead of being billed for renewal premiums based on group insurance rates, they were billed as if the policies had been individual policies. They seek to recover the excess premiums charged or paid as damages for such breach. Plaintiffs, however, do not allege a claim for breach of contract in the Amended Complaint which is the subject of the motion to dismiss.

Like the Plaintiffs here, the plaintiffs in N.C. Steel asserted claims for unfair and deceptive trade practices, fraud, and breach of fiduciary duties. Plaintiffs here also asserted an unjust enrichment claim based on the allegedly retained "dues" and excess premiums charged during renewal, and those claims were rejected because of the filed rate doctrine. As noted by the Lupton Court, "In N.C. Steel, the plaintiffs, companies paying

workers' compensation insurance premiums, alleged that the defendant insurance companies withheld certain evidence from the Insurance Commissioner about servicing carrier fees for residual market workers' compensation insurance in order to secure approval of excessive rates." Lupton, 139 N.C.App. at 425. Likewise, in this case, Plaintiffs argue that the initial group insurance rate was modified during renewal based on individual characteristics, not group claims. The initial group insurance rates were filed with and approved by the Insurance Commissioner whereas the renewal rates allegedly were not. There is no distinction between withholding evidence of fees, as was at issue in N.C.Steel, and withholding evidence about the manner in which group rates were to be assessed at renewal as was alleged to have been done here. In both cases, the insurance rates that were initially approved were the product of allegedly unlawful conduct because certain facts were not disclosed to the Commissioner. In re Empire Blue Cross & Blue Shield Customer Litigation, 164 Misc.2d 350, 622 N.Y.S.2d 843 (1994), *affirmed sub nom* Minihane v. Weissman, 226 A.D.2d 152, 640 N.Y.S.2d 102 (1996) (filed rate doctrine precluded suit based on breach of contract and fraud where allegation was that insurance company defrauded insureds by submitting

false information in support of premium rates).

In an attempt to avoid the filed rate doctrine, Plaintiffs contend they are not seeking review of the initial rates. Instead, they seek a declaration that the *renewal* rates were illegally assessed. Plaintiffs claim that since the renewal rates were never approved by the Insurance Commissioner, the filed rate doctrine does not apply. However, any policy for group health insurance, by statute, "provide[s] for readjustment of the rate of premium based on the experience thereunder[.]" N.C.G.S. §58-51-80(g). Obviously, the "experience thereunder" must refer back to the initial rates. Thus, any determination concerning renewal rates must refer to the initial rates approved by the Commissioner. Lupton, 139 N.C. App. at 426, 533 S.E.2d at 274; Horwitz v. Bankers Life and Casualty, 319 Ill. App. 3d 390, 407, 745 N.E.2d 591, 605 (2001) ("[S]ince it was the commission's function to determine the reasonableness of the rates charged, it would be contrary to the statutory scheme to allow the courts to retroactively perform this function in an implied right of action for reparations.") (citations omitted). "[T]he plaintiffs cannot prove their claim without the rates set by the Commissioner being questioned."[6] Lupton, 139 N.C.App. at 426, 533

---

[6]Plaintiffs cite Euclid Ins. Agencies, Inc. v. American Ass'n, 1998 WL 60775 (N.D.Ill. 1998), an unpublished case, in support of their position. It was argued there

S.E.2d at 274, *quoting* N.C. Steel, 347 N.C. at 636, 496 S.E.2d at 374. Thus, the filed rate doctrine applies.

In order to avoid this result, Plaintiffs attempt to distinguish the renewal rates from the initial rates by arguing that renewal rates are set by statute and are not subject to approval by the Commissioner. The statute, however, provides for the readjustment of group insurance premiums "based on the experience thereunder at the end of the first year[.]" The readjustment cannot occur without reference to the initial rates filed with the Commissioner. The Plaintiffs' argument is that the renewal premiums were based on individual claims, not the group claims. "Plaintiffs seek application to their policies of the group rates which they should have received." [Doc. 41, filed July 2, 2007, at 8]. Plaintiffs, however, "cannot prove their claim without the rates set by the Commissioner being questioned." Id.

Nor is this a case in which the Plaintiffs claim that the contract is ambiguous. See, *e.g.*, Horwitz, 319 Ill. App. 390. 745 N.E.2d 591.

---

that the reasonableness of the insurance rates was not being attacked; rather the insurer failed to honor its contractual obligations. The court found that a claim for breach of contract for failing to adjust rates pursuant to the contract was not precluded by the filed rate doctrine. Once again, the Plaintiffs here do not assert a claim for breach of contract.

Plaintiffs' claims focus on the validity of the premium rates charged, not ambiguities in the contract. Id. There is a statutory and regulatory scheme in place in North Carolina and "the filed rate doctrine precludes a private right of action governing premium rate disputes[.]" Id., at 407.

Finally, the Plaintiffs claim that by keeping a portion of the membership dues owed to TNI, the Defendants wrongfully increased the premiums collected. These "unjustified" premiums were not disclosed as part of the initial group insurance rates. [Doc. 31 at ¶3d]. Plaintiffs argue these undisclosed premiums allowed the Defendants to collect higher premiums on which they did not pay state premium taxes. The filed rate doctrine prohibits a party from recovering damages measured "by comparing the approved rate and the rate that allegedly would have been approved absent the wrongful conduct." H.J., Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485, 488 (8th Cir. 1992), *certiorari denied* 504 U.S. 957, 112 S.Ct. 2306, 199 L.Ed.2d 228 (1992); *accord*, Lupton, 139 N.C. App. at 424, 533 S.E.2d at 272; In re Empire Blue Cross and Blue Shield Litigation, 164 Misc.2d 350, 622 N.Y.S.2d 843 (1994), *affirmed sub nom* Minihane v. Weissman, 226 A.D.2d 152, 640 N.Y.S.2d 102 (1996). "[T]he plaintiffs cannot prove their claim without the rates set by the Commissioner being

questioned." N.C. Steel, 247 N.C. at 636, 496 S.E.2d at 374.  If the Defendants acted dishonestly with the Commissioner by failing to disclose these fees, this is a matter for the Commissioner's jurisdiction.  It does not give rise to a private right of action.  The Court therefore concludes as a matter of law that the filed rate doctrine precludes this claim as well.

The Amended Complaint alleges causes of action for fraud, unfair and deceptive trade practices, breach of fiduciary duty and unjust enrichment.  For the reasons stated herein the Court concludes that the filed rate doctrine applies to the allegations presented in this case.  As a result, all of the claims must be dismissed as precluded by that doctrine.  See also, Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17 (2nd Cir. 1994).

In short, like the Court in N.C. Steel, this Court does "not believe that, with this comprehensive regulatory scheme, the General Assembly intended that the rates could be collaterally attacked." Johnson v. First Union Corp., 131 N.C.App. 142, 145, 504 S.E.2d 808 (1998), *quoting* N.C. Steel, 347 N.C. at 632, 496 S.E.2d at 372.  As a result, the Defendants' motion to dismiss will be allowed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 37] is hereby **GRANTED** and this action is hereby **DISMISSED**.

Martin Reidinger
United States District Judge

Signed: August 19, 2008